UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT, <br><br> Plaintiff, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., <br><br> Defendants. | Civil Action No. 25-1846 (RDM) |

## SOUTHCOM'S MOTION FOR CLARIFICATION OR RECONSIDERATION OF THE PROCESSING RATE SET FORTH IN THE MARCH 13, 2026, ORDER

Pursuant to Federal Rule of Civil Procedure ("Rule") 54(b), U.S. Southern Command ("SOUTHCOM") respectfully moves for clarification or, alternatively, reconsideration of the Court's March 13, 2026, minute order to the extent it ordered SOUTHCOM "to process 500 pages per month."

## BACKGROUND

There are two Freedom of Information Act ("FOIA") requests at issue in this case directed to SOUTHCOM.[1] The first request seeks a copy of email and text communications of four senior SOUTHCOM officials containing certain keywords related to migrant operations at Guantanamo Bay, Cuba. Ex. B to Complaint (ECF No. 1-2). The second request seeks "formal or informal final directives (including informal email communications), guidance, protocol or policies created by, issued to, or otherwise provided to SOUTHCOM regarding

---

[1] This motion does not implicate the two FOIA requests directed at ICE.

detaining migrants at Naval Station Guantanamo Bay, Cuba" as well as seven other categories of records related to migrant operations there. Ex. D to Complaint (ECF No. 1-4).

The two requests require a lengthy and complex process before responsive records can be produced to Plaintiff, including a complex level of coordination with directorates within SOUTHCOM as well as other components within the Department of Defense (also referred to as the Department of War) (hereinafter, the "Department"). Ex. 1, Declaration of Marco T. Villalobos ("Villalobos Decl.") ¶ 7 (attached hereto). Before that process can begin, moreover, the potentially responsive documents need to be manually reviewed to determine which directorate or other component has equities in the document and that information then needs to be incorporated into a matrix that will be used as the basis for sending documents out for consultation and for tracking those consultations (hereinafter, the "consultation matrix"). *Id*. ¶ 12. Based on the experience of the SOUTHCOM FOIA office, it is more efficient to complete the consultation matrix and then send out comprehensive batches of records for consultation to the applicable equity holder at one time rather than sending out multiple piecemeal batches on a rolling basis, which can lead to confusion and difficulty with tracking outstanding requests. *Id*. Because many of the documents are emails, the preparation of the consultation matrix has proven to be a time-consuming process, and one compounded by the fact that SOUTHCOM'S FOIA office has limited staff (a FOIA manager and one FOIA analyst) and numerous other pending FOIA matters (over 300 with eleven open litigations). *Id*. ¶¶ 9, 12.

To date, the SOUTHCOM FOIA office has identified approximately 17,000 pages as potentially responsive to the two requests out of an initial search result of more than 40,000 pages. *Id*. ¶ 12. Since the Court's March 13, 2026, order the SOUTHCOM FOIA office, has added approximately 1,700 line entries to the consultation matrix. *Id*. The SOUTHCOM FOIA office

currently anticipates that the matrix will be completed by July of 2026. *Id.* Thus, the SOUTHCOM FOIA office expects to process 17,000 pages—in the sense of identifying the potentially responsive records that require consultation (likely the vast majority) and adding them to the consultation matrix—within approximately four months of the March 13, 2026, order, which translates to a processing rate of approximately 4,000 pages per month. *Id*. ¶ 13.

SOUTHCOM believes that its review of records for inclusion on the consultation matrix at a rate exceeding 500 pages per month complies with the Court's directive in the March 13, 2026, order that SOUTHCOM "process at least 500 pages per month." Pursuant to Local Rule 7(m), and in response to an inquiry by Plaintiff's counsel, the undersigned[2] initiated a conferral on this issue with Plaintiff's counsel on April 15, 2026, provided the accompanying Villalobos Declaration as part of that conferral, and spoke by telephone with Plaintiff's counsel on April 21, 2026. Following that conferral, counsel for Plaintiff advised that Plaintiff does not believe the above-described process is compliant with the Court's order.

Accordingly, SOUTHCOM seeks clarification from the Court that the above-described process of compiling the consultation matrix at a rate exceeding 500 potentially responsive pages per month complies with the Court's order or, alternatively, moves for reconsideration of that order to the extent the use of the term "process" by the Court was intended to have a broader meaning. Plaintiff's counsel has advised that Plaintiff opposes both the request for clarification and the alternative request for reconsideration.

---

[2]    Counsel of record for the Defendants, Assistant United States Attorney Dimitar Georgiev, has been on extended leave since mid-March 2026 and expects to return from leave by June 8, 2026. Jt. Status Rpt. (ECF No. 15) at 4. The undersigned is monitoring this case during his leave. Accordingly, the undersigned required time to familiarize himself with this case and confer with SOUTHCOM before being in a position to confer with Plaintiff's counsel on these issues.

**ARGUMENT**

The March 13, 2026, order followed the submission of a joint status report filed on March 12, 2026. In that status report, Plaintiff requested that the Court issue an order directing SOUTHCOM "to process 500 pages of records responsive to Plaintiff's FOIA requests and produce responsive records, and continue making productions on a rolling monthly basis, with the next production no later than March 19, 2026." Jt. Status Rpt. (ECF No. 15) at 4. SOUTHCOM objected to that request and stated that it "plans to continue conferring with Plaintiff about a processing rate that accounts for the demands on SOUTHCOM'S other FOIA obligations." *Id.* at 3. The Court's March 13, 2026, order did not require the production of records by any specified date but did order SOUTHCOM "to process at least 500 pages per month."

SOUTHCOM is "processing" at least 500 pages of potentially responsive records per month by reviewing records in excess of that rate to identify those that will require consultation with equity holders within SOUTHCOM and other components of the Department. The identification and submission of records for consultation is a recognized part of the "processing" of a FOIA request. *See Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 189 n.8 (D.C. Cir. 2013) (noting that FOIA itself "acknowledge[s] that some requests may require significant processing time to search for, collect, examine, and consult about documents before a 'determination' can be made"). Accordingly, by identifying records for consultation as part of preparing the consultation matrix, SOUTHCOM is complying with the processing rate in the Court's order. To avoid any confusion and potential future disputes on this issue, SOUTHCOM requests that the Court clarify that the above-described process complies with the Court's March 13, 2026, order.

However, to the extent the term "process" in the Court's order was intended to have a broader meaning—to include the meaning advanced by Plaintiff that "process" entails the

completion of every step leading to a final release determination over a set of records—SOUTHCOM respectfully requests that the Court reconsider that aspect of the March 13, 2026, order. Rule 54(b) governs reconsideration of orders that do not constitute final judgments such as the Court's March 13, 2026. *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). Reconsideration under that rule is within the discretion of the district court and may be granted "as justice requires." *Id.* Reconsideration is appropriate under the "as justice requires" standard because SOUTHCOM was not afforded the opportunity to explain to the Court the complex process involved in processing the two FOIA requests at issue as well as the limited resources that the SOUTHCOM FOIA office has available, including in relation to the volume of other FOIA requests it is handling.

Given the breadth of Plaintiff's request (including seeking "all email communications"), the identified custodians (senior SOUTHCOM Command officials), and the sensitive subject matter of the request (operations at Guantanamo Bay), the requests necessarily implicate equities throughout directorates of SOUTHCOM and the Department as a whole, requiring a complex and time consuming consultation process before a final release determination can be made as to any particular batch of records. That such a process might be involved for a complicated request of this nature should not be a surprise to Plaintiff, which is a sophisticated FOIA requester.

Indeed, the requests at issue are characteristic of the type of requests to which one court in this district alluded when it observed that "[n]onprofit litigants . . . have everything to gain and little to lose from posing broad, complicated FOIA requests." *Am. Ctr. for Law & Justice v. Dept. of Homeland Sec.*, 573 F. Supp. 3d 78, 84 (D.D.C. 2021). And, while that "is the system Congress hath wrought," *id.*, it still must be applied by courts in a manner that does not "make unreasonable demands of an agency." *Ctr. for Immig. Studies v. U.S. Citizenship & Immigration Servs.*, 628 F.

Supp. 3d 266, 271 (D.D.C. 2022).  Thus, when a requester submits a broad, complicated request, as here, any processing schedule that the Court adopts should recognize that a multi-step, time consuming process might have to be completed before the agency can make a final release determination as to any subset of responsive records.  And, when the record reflects that the agency is proceeding as diligently as the complexity of the request and limited resources allow, the Court should likewise refrain from imposing a schedule on the agency that would impede an orderly review of the records and divert limited resources away from other pending requests.

Accordingly, to the extent the Court intended "process" to mean something broader than SOUTHCOM'S current effort to identify records for consultation, SOUTHCOM respectfully requests that the Court reconsider that determination and modify its order to allow SOUTHCOM to complete that effort in an orderly manner.  In the event this motion is denied, SOUTHCOM anticipates filing a motion for an *Open America* stay given that it is proceeding as diligently as the complexity of the request and limited resources allow. *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976*); see also Energy Future Coal. v. Off. of Mgmt. & Budget*, 200 F. Supp. 3d 154, 161-62 (D.D.C. 2016) (finding "exceptional circumstances" and granting six-month stay of FOIA proceedings where an agency had sixty-eight pending FOIA requests, twenty-seven of which predated plaintiffs' request, and was in litigation in two other FOIA cases).

## CONCLUSION

For the reasons set forth above, the Court should grant SOUTHCOM's motion to clarify or reconsider the Court's order dated March 13, 2026, with respect to the requirement that SOUTHCOM "process 500 pages per month."

Dated: April 27, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Jeremy S. Simon*
　　　JEREMY S. SIMON
　　　D.C. Bar #447956
　　　DIMITAR P. GEORGIEV
　　　D.C. Bar # 1735756
　　　Assistant United States Attorneys
　　　601 D Street, NW
　　　Washington, DC 20530
　　　(202) 252–2528
　　　Jeremy.Simon@usdoj.gov

*Attorneys for the United States of America*