**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN OVERSIGHT,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-1846 (RDM) |

**MEMORANDUM OPINION AND ORDER**

On April 8, 2025, Plaintiff American Oversight submitted four requests to Defendants U.S. Immigration and Customs Enforcement ("ICE") and U.S. Southern Command ("SOUTHCOM") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See* Dkts. 1-1–1-4. Plaintiff sought records pertaining to the use of Naval Station Guantánamo Bay to detain individuals in civil immigration proceedings. On June 12, 2025, after Defendants had failed to respond to the requests within the time prescribed by law, *see* §§ 5 U.S.C. 552(a)(6), Plaintiffs filed suit, *see* Dkt. 1. The parties now dispute whether this Court should implement a production schedule for the remaining responsive documents.

The Court begins by summarizing the relevant history of this litigation. On September 3, 2025, ICE reported that it aimed to "make an initial release of responsive, non-exempt records on or before September 19, 2025," and "mak[e] a second, final release of responsive, non-exempt records on or before October 31, 2025." Dkt. 10 at 1. ICE subsequently confirmed that it had made an interim release of around 80 pages and further stated that "[a] number of documents were referred to other agencies." Dkt. 11 at 2. Two months later, in December 2025, ICE

reported that it would no longer make a second release of documents but instead had "referred" the remaining "64 pages of records" to the Department of Homeland Security, the Department of the Army, the U.S. Coast Guard, and U.S. Customs and Border Protection. Dkt. 12 at 1–2. ICE provided no further information about the referral procedure. *Id.* SOUTHCOM, meanwhile, concluded its search by December 2025 and reported that it had identified approximately 17,000 pages of responsive records, which it would "begin[] processing . . . shortly." *Id.* at 2.

Because no agency had released any further documents by March 2026, the Court issued a minute order requiring ICE to "obtain estimates from the Department of Homeland Security, the Department of the Army, the U.S. Coast Guard, and Customs and Border Protection regarding when these four agencies will complete their review of the referred records." Min. Order (Mar. 13, 2026). The Court further ordered that "SOUTHCOM process at least 500 pages per month." *Id.*

Defendants moved to clarify whether SOUTHCOM could meet its processing obligation by determining, at a rate of 500 pages per month, whether its responsive records required consultation with other agencies. Dkt. 16. In the alternative, Defendants moved for the Court to reconsider the processing obligation on SOUTHCOM. *Id.* In a motion hearing on May 28, 2026, the Court modified its order with respect to SOUTHCOM, directing that the agency divide the responsive records in two. Dkt. 21 at 16. For the first half of the records, the Court ordered SOUTHCOM to send out consultation requests within two weeks and "promptly review and release any nonexempt materials where consultation is not required or necessary." *Id.* at 16–18. For the remaining records, the Court indicated that SOUTHCOM should "send out" consultation requests "by the end of July." *Id.* at 16.

The parties next updated the Court on July 1, 2026. Dkt. 24. ICE provided no projected date for the completion of the referrals it had made. *Id.* at 1–2. And SOUTHCOM made no indication when it planned to begin producing responsive records to Plaintiffs, *id.* at 2, to comply with the Court's order for "prompt[]" release of materials not requiring consultation, Dkt. 21 at 16. Two months later, ICE reported receiving "additional responsive records," of which it released 103 pages to Plaintiff, sent 79 items for consultation to other agencies, and "referred" 49 pages "to outside agencies." Dkt. 28 at 1. But it continued to disclaim any "obligation" with respect to the "referred pages" and declined to estimate when they might be released. *Id.* at 2. SOUTHCOM continued to provide no timeframe for production. *Id.* at 2–3.

On September 16, 2026, more than fifteen months after Plaintiff filed suit, the Court entered a minute order requiring Defendants to "provide the anticipated time frame for disclosure of any records sent for consultation or referred to outside agencies" and reminding Defendants that "the agencies that receive FOIA requests are responsible for releasing all responsive, non-exempt records in their possession in a timely manner." Min. Order (Sep. 16, 2026). ICE responded that it anticipated completing production by January 2027, except that, in contravention of the Court's order, it provided no time frame for disclosure of the documents "sent for consultation with outside agencies." Dkt. 29 at 1–2. SOUTHCOM, too, failed to provide a time frame for the conclusion of its consultations or referrals, telling the court that "providing an estimated release date is impractical." *Id.* at 2.

The Court then ordered the parties to appear for a status conference. Min. Order (Oct. 16, 2026). That hearing has now occurred, and the parties have submitted status reports proposing next steps in this action. *See* Dkts. 30 & 31. For the reasons explained below, the Court will

impose a schedule for the prompt production of all non-exempt responsive material and completion of all necessary consultation.

As an initial matter, the Court notes Defendants' repeated assertion that Plaintiffs must proceed via motion to request a production schedule. Dkt. 29 at 2–3; Dkt. 30 at 5–8. That position is at odds with years of practice in this district and, indeed, is at odds with concessions that Defendants have themselves made in this case. Nevertheless, at the status conference, the Court proposed to treat Plaintiff's portion of the joint status report as a motion and ordered Defendants to respond. Oct. 21, 2026 Hrg. Tr. (Rough at 11). The Court relieved Defendants of that obligation only after counsel for Defendants conceded that proceeding by motions practice was unnecessary. Oct. 21, 2026 Hrg. Tr. (Rough at 30). Defendants have since provided the Court with a further status report, Dkt. 31, and a declaration, Dkt. 31-1. They have received more than ample opportunity to explain their views to the Court and to file any and all supporting materials that they deem relevant.

Accordingly, in light of Defendants' status report and supporting declaration, Dkt. 30, Plaintiff's response, Dkt. 31, and the procedural history summarized above, the Court will set the following processing schedule. To the extent that Defendants can demonstrate that they are "exercising due diligence in responding to" Plaintiff's FOIA requests but that "exceptional circumstance" justify the provision of "additional time to complete [their] review of the records," 5 U.S.C. § 552(a)(6)(C), they may seek appropriate relief, including an *Open America* stay, 547 F.2d 605 616 (D.C. Cir. 1976).

First, it is hereby **ORDERED** that ICE shall process all responsive records in its possession at a rate of at least 750 pages per month, releasing any non-exempt records to Plaintiff on a rolling basis or before the last business day of each month, with the first production

to occur on or before November 30, 2026. The parties agree on this production rate. Dkt. 30 at 1; Dkt. 31 at 5. ICE further requests that the Court include a five-month extension for any records that require consultation, Dkt. 30 at 1, but the Court deems that request premature. To the extent that ICE identifies documents requiring consultation that will interfere with the production schedule, ICE may inform the Court by status report and must identify the steps it has taken to obtain timely input from other, interested agencies and specify the date by which it proposes to complete the consultation "with all practicable speed." *See* 5 U.S.C. § 552(a)(6)(B)(iii).

As for the records ICE "referred to four agencies in September 2025 for direct response to [P]laintiff," Dkt. 30 at 2, ICE has repeatedly ignored the Court's orders to provide an anticipated time frame for the disclosure of the referred documents. *See* Min. Order (Mar. 13, 2026); Min. Order (Sept. 16, 2026); Min. Order (Oct. 21, 2026). An agency may "acquit itself" of its FOIA obligations through a referral only if "the referral does not lead to improper withholding." *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1118 (D.C. Cir. 2007). And a referral "constitutes 'withholding' of [the referred] documents if its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them." *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983).

More than eighteen months have now passed since Plaintiffs submitted their FOIA requests to ICE, Dkt. 1 at 8 (Compl. ¶ 27), and more than a year has passed since ICE first referred records to other agencies, *see* Dkt. 30 at 2. But ICE has never offered an explanation of its referral procedure or indicated when the referred requests will be processed. Accordingly, it is further **ORDERED** that ICE shall file a declaration, on or before November 12, 2026, that (1) sets forth ICE's referral procedures, (2) specifies the date by which ICE anticipates the

referrals will be processed, and (3) addresses whether the "net effect [of ICE's referrals] is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time [it] must wait to obtain them." *McGehee*, 697 F.2d at 1110. If ICE is unable to provide that information in a timely manner, then Plaintiff may request that the Court treat the referrals of September 2025 as withholdings by ICE. *See Peralta v. U.S. Attorney's Off.*, 136 F.3d 169, 175 (D.C. Cir. 1998) (explaining that "[s]uch a 'withholding' will be considered 'improper' unless the agency can offer a reasonable explanation for its procedure."). To the extent ICE has made or wishes to make further referrals, it is further **ORDERED** that ICE shall provide the same information in the first status report following any such referral.

Second, as to SOUTHCOM, the Court understands that, although the Department of Defense was operating under a self-imposed hiring freeze for a period of time, SOUTHCOM is working to increase the staffing of its FOIA office to meet its legal obligations. Dkt. 30 at 4–5. To allow the agency time to make necessary adjustments, it is hereby **ORDERED** that SOUTHCOM shall process the responsive records in its possession at a rate of at least 100 pages per month in November and December 2026, releasing any non-exempt records to Plaintiff on a rolling basis on or before the last business day of each month, and it is further **ORDERED** that the processing rate shall increase to at least 500 pages per month beginning in January 2027. Given the extended time frame for SOUTHCOM to complete its disclosure obligations, the Court directs SOUTHCOM to order its disclosures in a manner that creates time for any consultation SOUTHCOM deems necessary. To the extent that SOUTHCOM identifies documents requiring consultation that will interfere with the production schedule, SOUTHCOM may inform the Court by status report and must specify the date by which it proposes to complete the consultation "with all practicable speed." *See* 5 U.S.C. § 552(a)(6)(B)(iii).

Finally, it is further **ORDERED** that the parties shall submit a further joint status report on or before December 1, 2026, and on or before the first business day of each month thereafter, in place of any previously ordered status reports.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: October 28, 2026