**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN OVERSIGHT,<br>*Plaintiff*,<br>v.<br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br>*Defendants*. | Civil Action No. 25-1846 (RDM) |

**MEMORANDUM OPINION AND ORDER**

The Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, provides that "each agency, upon any [procedurally compliant] request for records[,] . . . shall make the records promptly available" to the requester. *Id.* § 552(a)(3)(A). In general, an agency must determine whether it will respond to a FOIA request within twenty working days. *Id.* §§ 552(a)(6)(A)(i), (C)(i). If the agency fails to provide a timely response, the requester may bring suit, and a court may "order the production of any agency records improperly withheld." *Id.* § 552(a)(4)(B). In adjudicating FOIA suits, the courts must ensure that "the statutory goals—efficient, *prompt*, and full disclosure of information" are not "frustrated by agency actions that operate to delay the ultimate resolution of the disclosure request." *Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 580 (D.C. Cir. 1987) (cleaned up) (emphasis in original); *August v. Federal Bureau of Investigation*, 328 F.3d 697, 699 (D.C. Cir. 2003) (same).

Consistent with the statute's mandate, an agency that "receives a FOIA request for 'agency records' in its possession . . . cannot simply refuse to act on the ground that the documents originated elsewhere." *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983). It

"must take responsibility for processing the request." *Id.* Although an agency may sometimes acquit its responsibility by referring the FOIA request to another agency for processing and production, it cannot do so "as a matter of course," but instead "must show that the [referral] procedure is reasonable under the circumstances." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1118 (D.C. Cir. 2007). A referral procedure might be reasonable if, for instance, the agency makes a "prompt and public" referral that "minimize[s] the burden on the requester" and avoids "the long delays resulting from the superimposition of two or more processing sequences." *McGehee*, 697 F.2d at 1111–12. On the other hand, a referral procedure "constitutes 'withholding' of [the referred] documents if its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them." *Id.* at 1110. Such a withholding "will be deemed 'improper' unless the agency can offer a reasonable explanation for its procedure." *Id.*; *see Peralta v. U.S. Attorney's Off.*, 136 F.3d 169, 175 (D.C. Cir. 1998).

This case concerns four FOIA requests that Plaintiff American Oversight submitted to Defendants U.S. Immigration and Customs Enforcement ("ICE") and U.S. Southern Command ("SOUTHCOM") pursuant to FOIA in April 2025. *See* Dkts. 1-1–1-4. Plaintiff sought records pertaining to the use of Naval Station Guantánamo Bay to detain individuals in civil immigration proceedings. In June 2025, after Defendants had failed to respond to the requests within the prescribed time, Plaintiff filed suit, *see* Dkt. 1. In an October 2025 status report, Defendant ICE stated that "[a] number of [responsive] documents were referred to other agencies." Dkt. 11 at 2. Two months later, ICE asserted that it did not plan to release those documents and instead had "referred" the remaining "64 pages of records" to the Department of Homeland Security, the

Department of the Army, the U.S. Coast Guard, and U.S. Customs and Border Protection. Dkt. 12 at 1–2. ICE provided no further information about the referral procedure. *Id.*

Since that time, the Court has entered four separate orders requiring ICE to provide the information necessary to determine whether its referrals constitute unlawful withholdings. Each time, ICE has failed to comply.

First, in March 2026, the Court issued a minute order requiring ICE to "obtain estimates from the Department of Homeland Security, the Department of the Army, the U.S. Coast Guard, and Customs and Border Protection regarding when these four agencies will complete their review of the referred records." Min. Order (Mar. 13, 2026). ICE failed to provide any projected date in its July 2026 status report. Dkt. 24 at 1–2. Instead, the agency simply asserted that it "does not have any control over the sixty-four referred pages, and their production is the obligation of the respective agencies." *Id.* At the Court's direction, ICE also "provided a summary outlining its efforts to obtain estimates from the[] [other] agencies regarding the status of the referrals." *Id.* at 1.

On September 11, 2026, ICE reported receiving "additional responsive records," of which it "referred" forty-nine pages "to outside agencies"; it continued to disclaim any "obligation" to release the "referred pages" and again declined to estimate when they might be released. Dkt. 28 at 2. With respect to the previously referred sixty-four pages, ICE merely repeated what it said in its July 2026 status report. *Id.*

Second, on September 16, 2026, the Court entered a minute order requiring Defendants to "provide the anticipated time frame for disclosure of any records . . . referred to outside agencies" and reminding Defendants that under *McGehee v. CIA*, 697 F.2d 1095 (D.C. Cir. 1983), "the agencies that receive FOIA requests are responsible for releasing all responsive, non-

exempt records in their possession in a timely manner." Min. Order (Sep. 16, 2026). ICE nevertheless made no mention of the documents it had referred to outside agencies in its next status report. Dkt. 29 at 1–2. The parties attached an email to their status report, however, which listed the occasions on which "ICE emailed follow up reminders" to the other agencies and identified the minimal responses the agency had received. Dkt. 29-2 at 2 (*e.g.*, request assigned tracking number).

Third, after holding a status conference on October 21, 2026, the Court entered a minute order requiring Defendants to explain why their "referral procedure is 'reasonable under the circumstances,' including by addressing whether the 'net effect [of the referral] is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time [it] must wait to obtain them.'" Min. Order (Oct. 16, 2026) (alterations in original) (first quoting *Sussman*, 494 F.3d at 1118; then quoting *McGehee*, 697 F.2d at 1110). ICE ignored those questions, instead requesting that "the Court permit [the] agencies [to which ICE referred records] until December 31, 2026, to process the records before taking any further action." Dkt. 30 at 2.

Fourth, on October 28, 2026, the Court issued a memorandum opinion and order requiring ICE to file a declaration "that (1) sets forth ICE's referral procedures, (2) specifies the date by which ICE anticipates the referrals will be processed, and (3) addresses whether" the referrals complied with the *McGehee* test. Dkt. 33 at 5–6. The Court cautioned Defendants that "[i]f ICE is unable to provide that information in a timely manner, then Plaintiff may request that the Court treat the referrals of September 2025 as withholdings by ICE." *Id.* at 6.

ICE responded with a declaration from Bradley Close, the Chief of Staff and Acting Assistant Director of the Office of Information Governance and Privacy at ICE. Dkt. 35-1

(Close Decl. ¶ 1). That declaration states that the ICE FOIA office "may identify records that originate with other agencies" as proper subjects for referral. *Id.* at 3 (Close Decl. ¶ 10). When it does so, the ICE office first "reviews [the records] for any ICE equities [and] notes any recommended withholdings," and then "transmits the records, along with a cover letter, to the originating agency for processing." *Id.* ICE also "provides the requester with the name of the recipient agency, a tracking number, and the number of pages referred." *Id.* at 3–4 (Close Decl. ¶ 13). Following the referral, ICE asserts "no control over [the] other agencies' timeline for completion." *Id.* at 4 (Close Decl. ¶ 14).

The Close declaration attests that ICE made its referrals in this case on September 18, 2025, *id.* (Close Decl. ¶ 15), nearly six months after ICE received Plaintiff's original FOIA request. ICE referred a total of sixty-four pages to four agencies. *Id.* Three of the agencies have yet either to process the referred pages or to provide ICE with any prediction for their processing timeline. *Id.* at 5–6 (Compl. ¶¶ 19–29). More than fourteen months have now passed since ICE made those referrals, with no evident progress.

With respect to the fourth agency, U.S. Customs and Border Protection ("CBP"), the Close declaration attests that CBP received a referral of fourteen pages, processed the fourteen pages "as consults," and then "returned them to ICE" in January 2026 with a recommendation that "additional agencies . . . should be consulted prior to release." *Id.* at 6 (Close Decl. ¶ 31). ICE then apparently accepted responsibility for the remaining consultation process. *Id.* at 6–7 (Close Decl. ¶¶ 32–34). This representation contradicts several of ICE's previous status reports: ICE continued to list "CBP" as an agency holding "records referred . . . for direct response" long after CBP returned the records to ICE in January 2026. *See, e.g.*, Dkt. 30 at 2; Dkt. 24 at 1–2; Dkt. 14 at 1. The Close declaration attests that ICE now "anticipates that [the] 14-page record

will be processed and thereafter produced by the end of December 2026." Dkt. 35-1 at 7 (Compl. ¶ 34).

As Plaintiff argues, Dkt. 37 at 3–4, neither the Close declaration nor the accompanying response to the Court's October 28, 2026 Order addresses the substance of the Court's concern under *McGehee*: whether Plaintiff would have received the requested records sooner had ICE taken responsibility for processing them, and whether any additional delay was reasonable given the concern for prompt disclosure of government records that Congress expressed in FOIA. *See* Dkt. 35 at 1–2; Dkt. 35-1 at 3–7 (Close Decl. ¶¶ 10–34). The Court understands that agencies across the government face FOIA backlogs. But, as noted above, FOIA requires agencies to act with reasonably promptness, and it demands that agencies commit substantial resources to meeting their statutory obligations. Here, moreover, the burdens are far from overwhelming. The Coast Guard, for example, has had over fourteen months to process *five pages* of records, and the Army and Department of Homeland Security have had a similar amount of time to process *seven* and *thirty-eight pages*, respectively. *See* Dkt. 35-1 at 4 (Close Decl. ¶ 15). Yet, approximately nineteen months after Plaintiff submitted its FOIA requests to ICE and over fourteen months after ICE made its referrals, ICA cannot provide even an estimate of when the Coast Guard, the Army, and/or the Department of Homeland Security will be able to complete this modest task. In addition, neither the Close declaration nor the accompanying response so much as mentions the additional documents ICE purported to refer in September 2026. *See* Dkt. 28 at 1–2. Most notably, ICE has never explained why it took seventeen months to identify and refer those records.

Accordingly, it is hereby **ORDERED** that ICE shall **SHOW CAUSE**, on or before December 9, 2026, why the Court should not conclude that ICE's referrals of September 2025

constituted improper withholdings by ICE because ICE has significantly increased the time Plaintiff must wait without offering a reasonable explanation for its procedure or the accompanying delay. *See Peralta*, 136 F.3d at 175.

It is further **ORDERED** that ICE shall **SHOW CAUSE**, on or before December 9, 2026, why the Court should not conclude that ICE's referrals of September 2026 constituted improper withholdings by ICE because ICE referred the records more than seventeen months after receiving Plaintiff's FOIA requests. *See McGehee*, 697 F.2d at 1111–12.

It is further **ORDERED** that ICE shall process the fourteen pages of records previously referred to CBP on or before December 31, 2026.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: November 22, 2026